PEIRSON *v.* PEIRSON.

MORTGAGES—FORECLOSURE—PAYMENT—ESTOPPEL.

In a suit to enjoin the foreclosure of a mortgage, evidence reviewed and *held* that, by some arrangement between the mortgagee and her son, the mortgagor, the debt was regarded as paid and she was estopped to assert its existence as to one who advanced money upon the strength of her representation to him that it was paid.

Cross-appeals from Lenawee; Chester, J. Submitted January 12, 1904. (Docket No. 12.) Decided July 16, 1904.

Bill by Electa W. Peirson against Clemenza E. Peirson, Ellen Britton and Edwin F. Wells to restrain the foreclosure of a mortgage. From a decree for defendants, complainant and defendant Peirson appeal. Reversed.

The object of the bill in this case is to restrain the foreclosure by advertisement of a mortgage for $3,900, executed by Eugene D. Peirson and his wife, the complainant, on a block in the city of Hudson, to the defendant Clemenza, the mother of Eugene. Complainant and her husband were married in 1881. Her father lived in Albion, N. Y. Owing to his ill-treatment, they separated, and she returned to her father's home in August, 1899. Accompanying the mortgage was a note executed by Eugene to his mother. The mortgage was dated November 30, 1892, and not recorded until December 7, 1899. The husband of Clemenza and the father of Eugene owned the property in question. He left a will by which he bequeathed two-fifths thereof to his wife, Clemenza, and one-fifth to each of his children, the son, Eugene, and two daughters. Eugene subsequently bought the interests of his mother and sisters, and the mortgage in question was

given to secure the amount of the purchase price due his mother. On September 5, 1896, Eugene executed a deed of this property to his wife, the complainant, which deed was recorded September 8th. It was a warranty deed against all incumbrances except three mortgages, neither of which was that of the defendant Clemenza. This deed was executed under the following circumstances: Soon after their marriage, the complainant, at the request of her husband, went to her father, and borrowed $1,000, giving her note for it. This money was loaned to Eugene. This note was renewed from year to year, and at the date of the deed amounted to $2,619.18. In 1888 complainant borrowed from her father another $1,000, for which both she and her husband gave a note. This note was renewed yearly, and at the date of the deed amounted to $1,726.02. About the time the deed was executed, complainant, at the request of Eugene, asked her father for more money. Mr. Warner, her father, went to Hudson, and it was then arranged that he would advance $550; that Eugene should execute a deed to complainant; and that his note should at the same time be surrendered, and he discharged therefrom. This was done, and complainant executed to her father notes for the sums above mentioned. Before consummating the arrangement, Mr. Warner, desiring to know the condition of the title, and after seeing the mortgagees mentioned in the deed to make an arrangement for an extension of time, told defendant Clemenza what he was about to do. She expressed her satisfaction. He asked her if she had any claim upon the property, to which she replied, "I have not; I have been all paid off." Relying upon this statement, the arrangement was consummated, and the deed executed. Soon after the record of this deed the creditors of Eugene filed a judgment creditors' bill against him and the complainant, charging that the deed was void as to creditors. In that suit Clemenza was a witness, and swore positively that her mortgage had been paid by Eugene. The creditors were defeated, and the deed held valid. An

assignment of the mortgage was made by defendant Clemenza to defendant Wells February 5, 1900, and recorded May 31, 1900. Mr. Wells was Clemenza's brother, lived in California, and had no knowledge of the assignment. It was made without any consideration, and for the sole purpose of having the foreclosure proceedings take place in his name. Foreclosure proceedings were then commenced by advertising in a newspaper in the city of Adrian, rather than in the city of Hudson, where the parties resided. Upon learning of this, complainant promptly filed this bill. Eugene was the moving spirit in these transactions. The deposition of Clemenza was taken, and she testified that complainant and her husband induced her to falsely swear upon the hearing in the judgment creditors' suit that her mortgage was fully paid. She testified upon this hearing that no part of it had ever been paid, although nine payments of $16 each and one of $15 were indorsed upon the note. Complainant positively denied making any request to her to give such testimony. Eugene was not a witness. Clemenza admits that Eugene requested her to keep the mortgage from the record, and requested her to give the false testimony as to its payment. There is some testimony corroborating the witness Clemenza as to her conversation with the complainant. The defendant Britton loaned to defendant Clemenza some money, and this mortgage was assigned to her as collateral security in addition to another mortgage. The circuit judge entered a decree for the defendant for the full amount of her mortgage and interest thereon from the date of the deed, giving a prior lien for the $550, the amount which Mr. Warner paid for his daughter at the time of the execution of the deed.

*S. E. Filkins* and *Watts, Smith & Baldwin*, for complainant.

*Fellows & Chandler*, for defendants.

GRANT, J. (*after stating the facts*). Two questions

are involved : (1) Was the mortgage in fact paid in whole or in part? (2) If not so paid, is defendant Clemenza estopped, by her testimony in the chancery suit and her statements to Mr. Warner, to now assert nonpayment?

We feel compelled to reach a different conclusion from that reached by the learned circuit judge, except that we concur with his conclusion that Eugene D. Peirson was guilty of fraud upon Mr. Warner. The judge found that "Warner should have his action against him [Eugene] for fraud." This would be a worthless remedy, as Eugene is financially worthless. When complainant, at the request of her husband, went to her father in New York, just before the execution of the deed, to obtain more money from him, he came to Hudson to find out how matters stood. There were three mortgages upon the property, the principal of which was $6,400. He evidently thought that the property was not worth sufficient to justify further advance in addition to what he had already loaned his daughter for her husband. With this in view, he with his daughter went to Clemenza to ascertain if she had any claim. This was natural, inasmuch as she had been one of the owners of the property, and had deeded it to her son. She told him, and also complainant, that the mortgage was paid. Relying upon this, Mr. Warner advanced more money to Eugene for his daughter as one consideration for the deed, and as a further consideration his obligation upon the note was canceled, and complainant alone became the debtor of her father for the entire amounts. Under the influence of her son, in whom she unfortunately trusted, and in order to assist him to obtain more money from Mr. Warner through his wife, defendant Clemenza made this representation. All parties were then friendly, and so remained until long after the termination of the suit brought by the creditors. Again upon that suit she testified positively that her mortgage was paid. It was not recorded. Complainant testified that she borrowed the money and gave her notes in the belief that the mortgage was paid, as represented to her by defendant

Clemenza. Her son had undoubtedly paid her some. He had money which he might have used in payment. The judge found that he had paid the interest to the date of the deed, though there is no more evidence that he paid the interest than there is that he paid the principal. Clemenza swears that she was never paid anything, notwithstanding the several small indorsements upon the note. Under these circumstances, and the little confidence that can be placed in one who deliberately acknowledges to having committed perjury, and as well in those who have connived at it, we think it just to assume that her statement to Mr. Warner and her testimony in the creditors' suit was true, and that in some way and by some arrangement between her and her son, the mortgage was regarded by her as paid, and that she is now estopped to assert its existence.

The decree is reversed, and decree entered for complainant, with the costs of both courts.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.